UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD WREN,                           :
                                        :CIVIL ACTION NO. 3:11-CV-1769
            Plaintiff,                  :
                                        :(JUDGE CONABOY)
            v.                          :
                                        :
COUNTY OF LUZERNE,                      :
MARYANNE C. PETRILLA                    :
and STEPHEN A. URBAN,                   :
                                        :
            Defendants.                 :
                                        :

**FILED**
**SCRANTON**

JUN 1 9 2015

PER _____ _____

~~DEPUTY CLERK~~

**MEMORANDUM**

Here we consider the filing titled "Defendants Luzerne County,
Maryanne Petrilla and Stephen A. Urban's Motions in Limine" which
presents seven motions to preclude evidence and/or testimony from
being presented at trial.  (Doc. 60.)  The motion was accompanied
by a supporting brief (Doc. 61), and Plaintiff filed his opposition
brief (Doc. 73) on May 22, 2015.  With the filing of Defendants'
reply brief on June 16, 2015 (Doc. 76), the motions are fully
briefed and ripe for disposition.

## I.Background

We briefly summarize the factual and procedural background of
this case to provide context for the motions under consideration.[1]

On July 13, 2005, Plaintiff was appointed to the position of
Director of Veterans' Affairs in Luzerne County by former

---

[1]  A detailed factual background is set out in the Court's
February 8, 2013, Memorandum addressing Defendants' County of
Luzerne, Maryanne C. Petrilla and Stephen A. Urban's Motion for
Summary Judgment (Doc. 20). (Doc. 38 at 2-12.)

Commissioners Gregory Skrepenak, Todd Vonderhied, and Stephen Urban.  (Doc. 23 ¶ 5; Doc. 29 ¶ 5.)  Plaintiff was a political affiliate of Gregory Skrepenak.  (Doc. 73 at 1.)  Defendants Petrilla and Urban were allegedly political adversaries of former Commissioner Skrepenak.  (*Id.*)

The County Commissioners had a duty of ensuring that flags are purchased and placed on gravesites each Memorial Day, and the activity was administered by the Veteran's Office under Plaintiff's leadership.  (Doc. 23 ¶ 45; Doc. 29 ¶ 45.)  Local veterans' organizations volunteer to place the flags and the County can reimburse them up to seventy-five dollars ($75.00) for refreshment and meals.  (Doc. 23 ¶ 46.)  Plaintiff was responsible for authorizing the reimbursement of payments.  (Doc. 23 ¶ 47; Doc. 29 ¶ 47.)  The veteran would submit a written receipt or written request with the amount of money spent to Plaintiff and a payment authorization form would be completed and the documentation attached, then Plaintiff would sign off on the payment.  (Doc. 23 ¶ 48; Doc. 29 ¶ 48.)  The executed payment authorization form and attached documents would then be sent to the County Controller's Office.  (Doc. 23 ¶ 50; Doc. 29 ¶ 50.)

Luzerne County authorized Plaintiff to establish his own procedure for the utilization of receipts for the purpose of reimbursing the coffee and doughnut expenses of veterans who volunteer to place Memorial Day flags.  (Doc. 29 CMF ¶ 45; Doc. 34

¶ 45.)  Defendants add that Plaintiff used the same procedure that had been used for "40-plus years" at the office, that is, attaching a receipt to the submission for payment authorization.  (Doc. 34 ¶ 45.)

Plaintiff had set a deadline of July 15, 2009, for the Memorial Day flag related food reimbursements, but had the right to change the deadline.  (Doc. 23 ¶ 50; Doc. 29 ¶ 50.)  In September 2009, John A. Brogna ("Brogna") sought reimbursement for expenses allegedly incurred at Perkins Restaurant on behalf of the Disabled Veterans of America, a group which assisted with 2009 Memorial Day cemetery decorating in the City of Pittston.  (Doc. 23 ¶¶ 51-52.) The Perkins receipt was reportedly misplaced and Brogna was unable to get a copy of the receipt from Perkins.  (Doc. 23 ¶¶ 53-55; Doc. 29 ¶¶ 53-55.)  Brogna returned to the office with a receipt from Perkins from another day which Plaintiff accepted and told the clerk to alter the receipt to reflect the date of May 31, 2009, and the amount $70.00 which Brogna said was the amount spent.  (Doc. 23 ¶ 56; Doc. 29 ¶ 56.)  The altered receipt was then attached to the payment authorization form for $70.00 and Plaintiff signed off on it and submitted it to the Controller's Office.  (Doc. 23 ¶ 57; Doc. 29 ¶ 57.)

Sharon Roke, who worked at the Veterans' Affairs office in 2009 as a Clerk 2 (and had since the Fall of 2008) with duties which included functioning as a payroll clerk (Doc. 25-7 at 8 (Pape

3

Dep. 7:10-18)), actually submitted the payment request at Plaintiff's direction. (Doc. 29 CMF ¶ 49.)

The altered receipt was noted by the County Controller's Office, and a meeting was held with Plaintiff, Chief County Solicitor Vito DeLuca, County Manager/Chief Clerk Doug Pape, and County Human Resources Director Doug Richards attending. (Doc. 23 ¶ 58; Doc. 29 ¶ 58.) Plaintiff admitted to the alteration. (Doc. 23 ¶ 59; Doc. 29 ¶ 59.) Chief County Solicitor Vito DeLuca and County Manager/Chief Clerk Doug Pape recommended that Plaintiff be terminated for submitting an altered receipt for reimbursement (Doc. 23 ¶ 60), an assertion disputed by Plaintiff as being implausible (Doc. 29 ¶ 60). On September 24, 2009, Defendants County Commissioners Petrilla and Urban voted to terminate Plaintiff at the public Commissioner's meeting. (Doc. 23 ¶ 61; Doc. 29 ¶ 61.)

Defendant Petrilla testified that in 2009 and before that some payment authorizations were paid for expenses directed to Luzerne County without having receipts. (Doc. 29 CMF ¶ 42; Doc. 25-2 at 30 (Petrilla Dep. 29:3-9).) Defendant Petrilla added that these employees did not submit false receipts; those expenses for which they could not produce receipts they had to personally pay back to the county. (Doc. 29 CMF ¶ 42; Doc. 25-2 at 30 (Petrilla Dep. 29:22-25).) These employees were not terminated. (Doc. 25-2 at 30 (Petrilla Dep. 29:17).) Defendant Urban made an unsuccessful

4

attempt (lack of second to his motion) to terminate involved
employees and also sought their resignation.  (Doc. 34 ¶ 42; Doc.
25-3 at 10 (Urban Dep. 30:21-25).)  At a County Prison Board
meeting, Defendant Urban made a motion to terminate former Warden
Sam Hyder and the motion was seconded by Defendant Petrilla but did
not pass.  (Doc. 34 ¶ 42; Doc. 25-3 at 10 (Urban Dep. 31:1-5).)
Urban testified that he believed Hyder was subject to termination
because of his misuse of the debit card (using the card at a Las
Vegas strip club) and his initial and subsequent denials of doing
so.  (Doc. 29 CMF ¶ 86; Doc. 34 ¶ 86; Doc. 25-3 at 10 (Urban Dep.
31:7-13).)

Plaintiff filed this action pursuant to 42 U.S. § 1983 on
September 23, 2011.  (Doc. 1.)  The Complaint contains four counts:
Count I asserting First and Fourteenth Amendment violations
pursuant to 42 U.S.C. § 1983 against all Defendants; Count II
asserting First and Fourteenth Amendment violations pursuant to 42
U.S.C. § 1983 against Defendants Petrilla and Urban in their
individual capacities; Count III asserting Discrimination on
Account of Age pursuant to the Age Discrimination in Employment Act
("ADEA"), 29 U.S.C. § 623(a) and 29 U.S.C. § 215; and Count IV
asserting Discrimination on Account of Age pursuant to the
Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955(a).  (Doc.
1.)  As a result of the Court Orders of February 8, 2013, and
February 28, 2013, the only claims going forward were Plaintiff's

First Amendment association claims in Counts I and II.   (Docs. 39, 42.)

## II. Discussion

### A. *Relevant Law*

As noted above, the only remaining claims in this case are those based on Plaintiff's assertions that his First Amendment freedom of association rights were violated.   Plaintiff alleges in his Complaint that he was terminated in part because of his political affiliation with Gregory Skrepenak, a County Commissioner during the time at issue to whom Defendants Petrilla and Urban were politically opposed.   (Doc. 1 ¶¶ 21-24, 30-31.)   Because the relevance of evidence/testimony Defendants seek to preclude must be decided in the context of the legal elements of a freedom of association claim, we briefly set the relevant legal standard.

In order to make a prima facie case of political discrimination in violation of the First Amendment, a plaintiff must show the following: 1) he was employed at a public agency in a position that does not require political affiliation; 2) he was engaged in constitutionally protected conduct; and 3) this conduct was a substantial or motivating factor in the government's employment decision.   *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007) (citation omitted).   Once a plaintiff makes this showing, a defendant "may avoid a finding of liability by proving by a preponderance of the evidence that the same

employment action would have been taken even in the absence of the protected activity." *Id.* (citing *Stephens v. Kerrigan*, 122 F.3d 171, 176 (3d Cir. 1997); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

**B. *Defendants' Motions***

**1. Motion in Limine to Preclude Plaintiff from Arguing, Referencing and/or Testifying Regarding Any Alleged Misuse or Discipline Resulting from Current and/or Former County Officials' Use of County Issued Debit Cards**

With this motion, Defendants seek to preclude evidence they expect Plaintiff to attempt to introduce regarding other prior or present county officials who allegedly misused county debit cards in 2007 and were not disciplined as a result. (Doc. 61 at 3-4.) Defendants maintain that Plaintiff should not be allowed to introduce evidence about the other alleged misuse to show disparity of discipline between those individuals and Plaintiff because the evidence is not similar in nature to the incident at issue, and it will prejudice Defendants and confuse the jury. (Doc. 61 at 3-4.) Defendants primarily point to the fact that no other County personnel submitted false receipts for reimbursement, rather they used County debit cards for questionable expenses. (*Id.* at 4.) Defendants also assert there is no true disparity of discipline because Defendant Petrilla "was not a County Commissioner at the time of the purported debit card situation and therefore did not possess the authority to discipline or discharge those individuals

involved." (*Id.*)

Plaintiff points to the fact that the underlying expense in
Plaintiff's case was properly incurred and it is undisputed that he
did not intend "to line his own pockets" by his actions. (Doc. 73
at 4, 5.) In contrast, Plaintiff points to the County personnel
debit card cases in which County officials could not produce
receipts to show that debit card purchases were legitimate
expenses, characterizing this as "[f]ar worse conduct on the part
of county employees, with far greater financial implications" which
did not result in termination. (*Id.* at 4.) Plaintiff also points
to the assertion by Luzerne County Controller Walter Griffith that
Luzerne County has not disciplined employees who submitted multiple
invoices for the same service "only because they were not intending
to line their own pockets." (*Id.* at 4-5.)

Defendants state that "the lack of discipline taken against
the debit card holders under plainly dissimilar circumstances is of
no evidentiary relevance to this matter." (Doc. 76 at 3.)
Plaintiff takes a broader view, stating that he "and all of the . .
. described comparators were all obligated to ensure that County
dollars were spent for proper purposes." (Doc. 73 at 5.)

Though not a First Amendment case, the Supreme Court noted in
*McDonnell Douglas v. Green* that evidence showing that an employee
who was involved in acts of comparable seriousness was treated
differently would be especially relevant to the plaintiff's claim

8

that the employer's stated reason for the adverse action was pretext.[2]  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973).  In considering the parameters of an acceptable comparator here, cases addressing Title VII and equal protection claims are useful although the elements of a First Amendment association claim differ.  Courts have described the "similarly situated" inquiry regarding suggested comparators in terms of the plaintiff showing that the other employees' acts "were of comparable seriousness to his own infraction, and that the employee engaged in the same conduct without such differentiating or mitigating circumstances as would distinguish the employee's conduct or the employer's resulting treatment of the employee."  *Tyler v. Southeastern Pennsylvania Trasp. Authority*, Civ. A. No. 99-4825, 2002 WL 31965896, at *3 (E.D. Pa. Nov. 8, 2002) (citing *Anderson v. Haverford College*, 868 F. Supp. 741, 745 (E.D. Pa. 1994)).  Relevant factors may include whether the comparators had the same manager, *see, e.g.*, *Neely v. United States Postal Service*, 307 F. App'x 681, 684 (3d Cir. 2009) (not precedential), and whether the

---

[2]  While the *McDonnell Douglas* burden-shifting framework is not applicable to a First Amendment retaliation claim, the Court of Appeals for the Third Circuit has held that the causation analysis in a First Amendment retaliation claim is the same as the causation analysis applied to a Title VII retaliation claim.  *Brennan v. Norton*, 350 F.3d 399, 420 (3d Cir. 2003); *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 144 (3d Cir. 2000).  *Brennan* noted that cases addressing an employer's alleged retaliation for protected activity under Title VII is helpful to a First Amendment claim.  350 F.3d at 420.

employees were subject to the same standards and policies, *see,*
*e.g., Burton v. Arkansas Secretary of State*, 737 F.3d 1219 (8th Cir.
2013).  Courts have

> explicitly rejected the notion that
> comparator analysis requires that the
> compared employees engaged in "the exact same
> offense."  . . . [D]emanding that the
> compared employees have engaged in precisely
> identical conduct would make an employee's
> conduct which was more serious than that of
> the plaintiff irrelevant to the analysis.
> "Common sense . . . dictates that we reject
> such an approach."

*Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1085 (8th Cir. 2013) (quoting
*Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 488 (8th Cir.
1998)).  *Burton* noted that

> [w]hile no employee is a precise clone of
> another, the probative value of comparator
> evidence will be greatest when the
> circumstances faced by the putative
> comparators are most similar to the
> plaintiff's.  Where evidence demonstrates
> that a comparator engaged in acts of
> "comparable seriousness" but was disciplined
> differently, a factfinder may decide whether
> the differential treatment is attributable to
> discrimination or some other cause.

*Burton*, 737 F.3d at 1231 (citing *Chaney v. Plainfield Healthcare
Ctr.*, 612 F.3d 908, 916 (7th Cir. 2010); *Lynn*, 160 F.3d at 489).

Similarly, we conclude that a factfinder may decide if the
treatment Plaintiff experienced when he was terminated for the
manner in which he submitted the expense at issue was in
retaliation for engaging in conduct protected by the First
Amendment or for the reason stated by Defendants.  Considering the

10

common denominator among Plaintiff and the suggested comparators to be that all were involved with irregularities related to submitting expenses for payment, we cannot say as a matter of law from the evidence submitted thus far that the comparators' actions were not of comparable seriousness.   Furthermore, it appears that the ultimate decisionmaking body in Plaintiff's case and those of the debit card employees was the same, i.e., the County Commissioners of Luzerne County.   Therefore, we do not preclude this evidence on relevance grounds under Federal Rule of Evidence 401.

We now turn to the consideration of whether this evidence should nevertheless be excluded pursuant to Federal Rule of Evidence 403 which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.   We conclude that the danger of unfair prejudice, confusion of the issues, and misleading the jury are not bases to exclude comparator evidence because the distinctions drawn by Defendants between Plaintiff and the suggested comparators will be introduced at trial and factfinders are certainly capable of assessing the distinctions and similarities presented.   We also do not find that undue delay, wasting time, or needless presentation of cumulative evidence are reasons for excluding evidence.   Should any of these problems arise

11

at trial, the Court is well-equipped to appropriately address the matter at the time.  Therefore, this Motion in Limine is denied.

## 2.   Motion in Limine to Preclude Plaintiff from Introducing Evidence or Referencing Pennsylvania's First Class County Code

With this motion, Defendants seek to preclude Plaintiff from introducing evidence or referencing Pennsylvania's First Class County Code, 16 P.S. § 7926, for the proposition that the reimbursement of veterans' groups for Memorial Day expenses does not require receipts to verify expenses incurred because Luzerne County is not a county of the first class.  (Doc. 61 at 8.)

Plaintiff does not disagree that 16 P.S. § 7926 is contained in Pennsylvania's First Class County Code but argues that the provision, entitled "Memorial Day Organizations," by its "plain language . . . indicates that it was intended to apply to all counties" and the requirement that appropriations be made for the decoration of graves does not require that receipts be supplied to justify payment.  (Doc. 73 at 8-9.)  The basis of the argument is that Philadelphia County is the only First Class County in the Commonwealth and the provision specifically refers to "counties." (*Id.*)

We need not get into the technicalities of the provision as we conclude that a provision which applies to "Counties of the First Class" should not be construed to apply to counties which are not of the first class.

Therefore, this Motion in Limine is granted.

3.    **Motion in Limine to Preclude Plaintiff from Calling Witnesses
      Other than Plaintiff**

     With this motion Defendants seek to preclude Plaintiff from

calling witnesses other than himself pursuant to Federal Rule of

Civil Procedure 37(c)(1) because he did not provide any names to

Defendants as required by Federal Rule of Civil Procedure

26(a)(1)(A)(I), and did not respond to an interrogatory requesting

Plaintiff to identify witnesses whom he intended to testify at

trial.  (Doc. 61 at 9-10.)

     Plaintiff states Defendants have not cited any case in support

of their argument, he has not failed to comply with pretrial

deadlines regarding witnesses, his responses to interrogatories and

document requests indicate numerous potential witnesses, and his

counsel has provided Defendants with a list of all persons with

discoverable information.  (Doc. 73 at 9-11.)

     Defendants did not address this motion or Plaintiff's response

in their reply brief.

     We conclude this motion is properly denied.  Should Plaintiff

not comply with pretrial disclosure requirements, Defendants may

file a motion at that time.

D.    **Motion in Limine to Preclude Plaintiff from Introducing
      Newspaper Articles or Editorials Concerning His County
      Employment**

     With this motion, Defendants anticipate Plaintiff will attempt

to introduce newspaper articles, including editorials, regarding

his job performance and/or termination and they seek to preclude

him from doing so on the basis that newspaper articles are generally considered hearsay and are only admitted in exceptional circumstances. (Doc. 61 at 10.)

Plaintiff responds that he does not intend to introduce such material to prove the truth of the matter asserted but, rather, to substantiate his claim for compensatory damages based on emotional and mental distress. (Doc. 73 at 12.) Plaintiff claims that the articles and editorials "show the breadth of the public's knowledge of the circumstances surrounding [his] termination as stated by the Defendants, which allegations are baseless, embarrassing and humiliating." (*Id.*)

We conclude that the best course of action in this matter is to hold a decision on the motion in abeyance as a proper determination can only be made in the context of the circumstances in which Plaintiff seeks to introduce such information at trial.

## 5.   Motion in Limine to Preclude Plaintiff from Introducing Evidence of an Alleged List of Individuals Who Supported Plaintiff

Defendant asserts that, in his responses to discovery requests, Plaintiff produced a purported list of individuals who allegedly supported his job performance and Plaintiff should be precluded from introducing this list at trial. (Doc. 61 at 11.) This motion is deemed moot in that Plaintiff states he does not intend to introduce this list as evidence at trial. (Doc. 73 at 13.)

14

**6.    Motion in Limine to Preclude Plaintiff from Introducing Evidence Regarding His Wife's Death**

Although Defendants speculate that Plaintiff may seek to introduce evidence relating his wife's death to the loss of his health benefits (Doc. 61 at 12), Plaintiff responds that he does not intend to introduce such evidence (Doc. 73 at 13).   Therefore, this motion is deemed moot.

**7.    Motion in Limine to Preclude Plaintiff from Testifying as to Medical Causation and Prognosis Requiring Expert Testimony**

Noting that Plaintiff has not produced any medical evidence in support of his physical or emotional injuries nor identified any expert witness, Defendants assert that, based on Federal Rule of Evidence 701, Plaintiff should not be allowed to testify as to the extent of his alleged physical and/or emotional injuries which are not based upon his first-hand knowledge and observation, are not readily apparent to lay persons, or which do not assist the jury in their role as factfinder.   (Doc. 61 at 13-14.)   Plaintiff responds that he does not intend to testify as to any matter which requires expert testimony.   (Doc. 73 at 13.)   Therefore, this motion is deemed moot.

## III. Conclusion

The Court recognizes that witnesses may, deliberately or inadvertently, wander into areas previously proscribed by rulings of this Court.   In such circumstances, the Court may have to reconsider its rulings and, in certain circumstances, even reverse

them.  Hopefully, this can be avoided by scrupulous preparation by counsel.  However, witnesses may deliberately try to inject into the case matters which the Court has ruled are inappropriate under the circumstances of the pleadings.  Whatever the cause, there may be need for the Court to reconsider some of the rulings issued on motions filed by counsel in this case.

The Court has thoroughly considered the arguments presented by counsel regarding Defendants' motions.  It is our hope that continued assiduous preparation will help counsel in presenting this case thoroughly and directly to a jury.  It is also our hope that the rulings on the motions filed will enable counsel, especially in preparation of things like opening statements and examination of jurors, to move the trial along expeditiously and that only appropriate questions will be raised and discussed in the courtroom before the jury.  An Order consistent with the foregoing Memorandum will be filed contemporaneously herewith.

RICHARD P. CONABOY
United States District Judge

DATED:  6-19-15

16